The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the 4th Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, we are ready to begin argument in our only case this morning, United States v. Hamilton. And Ms. Letty, whenever you're ready, we'd be pleased to hear from you. May it please the Court, this is Kristen Letty appearing this morning on behalf of Paul Glenn Hamilton, Jr. Mr. Hamilton argues in his appeal that certain special conditions attached to his supervised release term upon completing a 120-month prison sentence are overly restrictive, overly broad, and vague. Mr. Hamilton challenges three special conditions, specifically a restriction on employment for his lifetime, a restriction on his internet use for his lifetime, as well as a movement restriction. Each of these restrictions, special conditions, applies for the entire extent of Mr. Hamilton's life as the term of his supervised release is life. So I could speak on each of these conditions in turn and more specifically about his argument for each one. Well, tell me, is your complaint about the fact that the way in which the conditions are framed or is it a complaint about the fact that it delegates too much discretion to the probation officer? Which one is it? For each of these, we do believe that the discretion is entirely placed in the probation officer's hands and there's no clue for Mr. Hamilton as to what activities the probation officer or multiple probation officers really, since he's going to be on supervised release for his life, what each of those individuals, what activities would qualify as legitimate, what internet websites will qualify as legitimate. There's very little information. Your question, your problem then is the way in which the special conditions are framed, that it's too broad? Yes, your honor. All right, well, let me ask you this. Let's just take the employment restriction. Certainly. How would you make that more explicit? The government makes the point that we can't go listing job by job by job of what you can do and what you can't do. So tell me how you would make the employment restriction more explicit. How would you have it read? Well, this dovetails with the movement restriction, your honor, in that the restriction could apply to jobs where he would come into contact with members of the general public, for example. If the court's concern were making sure that he were not able to prey on children, which I think is the concern here, then when a prospective job could potentially involve interaction with children, that would be one way to carve out the restriction. I thought that this is... Go ahead. This is Judge Agee. So either this court or the district court would, if we decided that the restriction was overbroad, would need some guidance. Because surely, I think as your last answer indicated, you agree that there are employment restrictions that are valid, such as being in contact with children. But I would also think any job that gave him access to information about children would be covered. How specifically would you write an employment restriction that you think would be appropriate here? Well, your honor, I believe that he would, under the argument that it would be any job wherein it was a chance that he... Let me back up. He would need prior approval from his probation officer for a position that might involve him encountering children. And not in a chance or incidental manner. Isn't that inherent in the restriction as it's presently worded? Well, the restriction as it's presently worded forbids him from attempting to obtain any sort of employment without prior approval. Counsel, what about if we flip that around and said, instead of giving him the ability to make that threshold determination, what if the restriction said that he could not obtain employment without approval from his probation officer and his probation officer shall approve employment unless it involves a reasonable risk of encountering children or obtaining information about them? Would that be sufficient? Yes, your honor. That's a further explanation is the sort of thing we're looking for. And so what you're really saying is it'd be fine to have it, but you just need some guidance to the probation officer. I suspect we all know that that's what the probation officer would do anyway, but you just, you believe it needs to be spelled out. Yes, your honor. Especially when we're dealing with a lifetime of supervision. And this gentleman, let me ask this. If, if, if we had to take the one we have on employment and the probation officer that he happened to be assigned at the time, you know, refused to allow him to work in a manufacturing facility, right? Where there were no indications that children would be present or there was information about children available. If the probation officer refused that, couldn't he go to court and say, listen, judge, this is an unreasonable and arbitrary exercise of the probation officer's authority to keep me from working down at the plant. That relief is still available to him, right? Yes, he can ask the court to modify the terms of his supervised release. The, um, what are the conditions on which modification is allowed? I think there's an explicit provision for modification that, um, in view of unforeseen circumstances, um, you, you think that there is recourse to the court and, um, or an ability to seek judicial modification any time the, uh, probation officer's refusal to grant permission, um, is, doesn't suit you. I mean, can you, uh, what are the conditions in your view under which you can seek, um, modification? Does it require some kind of unforeseen circumstance or can it be any, um, uh, can it be any decision on the part of the probation officer that a particular job or employment is unreasonable or unreasonably risky? Can you, how frequently and, um, what, what is your judicial recourse in your view? In my view, my understanding of the situation is that there has to be some sort of change in circumstances that leads, uh, an appellant to be able to modify or petition the court to modify the terms of his supervision. But I'm talking about, you know, you, you, obviously the system depends upon, uh, a You, you really can't have the judge, um, micromanaging all of these supervised release conditions because that's what probation officers are for. Um, so let's suppose the, the, uh, special condition is reasonably framed facially, especially reasonable, but you have, um, an issue with the restriction as applied. Um, do you have a judicial recourse in your view for as applied challenges to a restriction or are your, um, are your options really, um, limited to, um, uh, a, a facial challenge, which, how do you see that? Your Honor, I believe we are limited to, uh, a facial challenge. I don't believe I, when the court states, um, in sentencing an individual that they're responsible to, to impose these conditions in order to protect the public. Well, what about protecting the public in this case, um, that makes, that separates this case from others, um, is the, is the, is the need. So I, I, if I understand your question correctly, Your Honor, I believe that he, he has only facial, um, challenges to the case. So really what you're interested in is, is not the degree of the discretion that the probation officer enjoys, which it seems to me is part and parcel of any kind of, uh, supervised release regimen. Your, your, your contention is that this is too broad as a facial matter that the, uh, that the special condition is just overly broad. Yes, Your Honor. So far, counsel, you've addressed the employment restriction, but there are two others. What's wrong with those? Well, the, the, in my view, um, the lifetime restriction on the internet, um, uh, is, is also overly broad. And, um, I believe that he may have first amendment concerns as well. Um, again, here we have no idea what activities the probation officers, um, might qualify as legitimate. Um, there's, there's things like him wanting to read about current events or communicate with family members who may be far flung. Um, and it's entirely up to this, this is entirely up to the probation officer to decide, you know, what constitutes a legitimate purpose. Um, well, unlike the arguably, unlike the employment restriction, uh, the internet restriction clearly has a nexus to his crimes here because he relied very heavily on the internet to perpetrate the offenses, uh, that he did. Um, so you've got a very clear tie to a restrictive use. And, um, unless you've got some specific example of, of how this could and should be modified, I'm not sure how you could prevent him if he has access to the internet from just doing again, what he did before. My time has run out your honor, but if, if I may answer really quickly. Um, there's a, uh, also a restriction in place that, that allows for computer monitoring. And if he was accessing the internet using and, and accessing his victims using only social networking, then that provision in his supervised release would, um, prevent him from being able to access social networking websites, not simply preventing him from accessing from using the internet entirely. Well, could you speak of modification of that over time? Let's suppose there's a three or five year, um, period of good behavior. Um, could you go back to the court and ask for some sort of modification of that, of that condition? Well, I believe that requires, um, a bit of speculation on our parts, your honor. Uh, I don't know what social networking is going to look like in 10 years when Mr. Hamilton, um, is released from incarceration. If that's indeed when he eventually does get out of jail. Um, say one of the problems I have in connection with what Judge Agee, I thought Judge Agee made an excellent point. Um, that he, he seems so determined to, um, collect these, uh, uh, child pornography pictures. I mean, even to the point of disregarding a, um, a protective order, um, he used the internet to pursue the victim even after the protective order had been issued. So it almost, um, there's a determination here that sort of defies determinants. I mean, I know there are a lot of, there are a lot of, um, court decisions out there that, that do not, um, that say that internet restriction is overly broad, but they didn't involve quite the, um, uh, facts of this one where a 14 year old girl was kidnapped and, and, um, the internet was used for more than a year to communicate with her. And she was essentially raped repeatedly, knew her, he knew her age, and he had quite a collection of, um, nude photographs and sexually explicit videos. And, um, and, um, not only was the, um, internet the, um, instrument of his crime with, he used it both, uh, uh, visually and verbally. I mean, they were text, textual communications and, um, the, uh, he, he used it to make, uh, sexually explicit videos and to solicit nude videos. I mean, it was like the internet was his whole modus operandi and his instrument of, of, um, operation. So why, at least as an initial matter, um, could you, couldn't she say, stay off it, the district judge stay off it because, um, there's almost an addiction to using the, um, internet in this fashion. And, and, um, if one of the, one of the chief goals of supervised release is to protect the public, um, and that's gotta be a, a, a major factor in the conditions on supervised release, you know, why to just sort of piggyback on Judge Agee's point, why isn't this, why isn't this reasonable? I mean, the district court has to have some, some discretion. We can't, we can't squeeze discretion out of the system. We can't squeeze discretion out of the probation officer's job. We can't squeeze the discretion out of the, uh, district court's latitude in setting these conditions. And I can see a different set of circumstances where the internet restriction would be overly broad and overly onerous. But the problem you have here are the, are the facts of what he, what he did and those other cases don't have the powerful, uh, nexus that this one does. That's a, that's a problem that I'm having with this particular condition. Maybe you could comment on that. I would like to, Your Honor. Thank you. Um, I believe that our argument on the internet issue specifically would be different if he had not been given a lifetime of supervised release, Your Honor. I believe, um, and, and I've spoken with, um, Mr. Moss, who was Mr. Hamilton's counsel below and, and in crafting the arguments here, Your Honor, that, um, we probably would not have made this argument had his supervised release term been five to 10 years. But because it is lifetime, we believe that it's overly broad and, and too restrictive, um, in this case. But you've indicated that you, modification at some point if, if the first, let's say five years go well. No, if he, if he demonstrates the probation officer, look, I've, um, I've taken some therapy and I've, um, I realized my previous addiction. I haven't, um, I haven't gotten in any trouble in any way. I haven't tried to use the internet for this purpose. I mean, isn't there the possibility of modification under those circumstances? Yes, Your Honor. And I, I also think there is a definite possibility that he could receive some, some programming and some therapy while he is incarcerated to help him with, with this issue specifically. I, I also think that there's, there, that there's a, uh, like a blanket internet ban is, is problematic because, uh, you know, if it appears in this case, it's going to appear in other cases too, where it might, where it might not, you know, I don't believe that this is, it's a clear cut case. That it's definitely clear cut that this is not, that this is not a really restrictive, but I think that, that there's other cases where it certainly will be, and we'll be arguing and wasting the court's time asking for modification after modification. The only point I'm making is that if, if, if I were Mr. Hamilton, I think what I would do is I would enroll in a therapy course or undergo some kind of, he can do this while incarcerated, he can do it while on supervised release and, and, um, enroll in a course of treatment and therapy and stay out of trouble. And then after a certain number of years, go to the probation officer who would have the, who has the permission to allow him to, um, to actually use it. Um, and if that doesn't work out, maybe you could go to the court. But what I'm saying is, doesn't a certain amount of responsibility lie with him, um, to prove to the probation officer and the court that he actually could be a responsible user of it? Um, I just wonder whether the responsibility doesn't lie with him initially to, um, show some bona fides rather than us sort of overturning this without any demonstration, um, that there's been a change of behavior or a change of heart. Yes, Your Honor. Um, I think we'll just have to disagree that, and we find that this is, that this restriction is, is extreme. All right. Well, you've, um, I think your time has expired and you've got some rebuttal time that we want to hear from you. And let's, at this point, let's hear Miss Crockett. May it please the court. Kimberly Crockett on behalf of the Appellees. Respectfully, Your Honors, the Appellees do disagree with the appellant's position. In this case, the district court had brought latitude to impose these conditions because they are reasonably related to the statutory sentencing factors, um, deterrence, protecting the public, um, providing training and, and, uh, treatment. And we believe that the, um, they cause no greater deprivation of liberty than is reasonably necessary. Um, looking at it, and I understand the court spent considerable time talking about the employment, um, provision. Um, I'd note that the court did an individualized assessment of the appellant spending considerable time in this case, discussing his history and characteristics, as well as the need to protect the public from further crimes. And I know that, uh, Judge Wilkinson spent some time talking about the facts being powerful in this case, the determination of the appellant being powerful in this case. And I think that was a driving factor for the court, particularly when it looked at, um, employment and looked at the computer use restrictions. Um, the court did note that it would have a difficult time. I, I think the way the court phrased it was it would, she would be there a month from Sunday trying to name all the different types of occupations that the court, or that the appellant shouldn't engage in. And, um, because it would be difficult to craft a, um, a restriction, impose the restriction the way she did. Um, the district court— You wouldn't have, to make it more specific, you wouldn't have to go job by job by job, would you? You could, or you could frame something like, um, I thought, um, I thought Judge Richardson made a very good point, um, at the beginning of the argument when he said, why don't you turn it around and say the probation officer shall approve the employment unless, and, you know, I'm just taking a, thinking out loud here, unless it involved, um, regular or private contact with children. Um, that doesn't, that doesn't involve a job by job listing, um, but it would be something that's more explicit than what we have at present if we, if we simply tied the permission and say, yeah, you approve, uh, this, um, unless the job involves regular or private, uh, contact with, um, children because, see, one of the purposes of supervised release is to, um, protect the public, but another purpose of supervised release is to, um, help somebody make it back, um, and to become a bridge between full-scale incarceration and, and unrestricted freedom. And so you have to balance those two purposes. And, um, if you just have a blanket ban on employment, um, aren't you denying the individual perhaps unnecessarily from holding a, a job that might, you know, set him on the road to become a responsible citizen? Um, there is that dimension of supervised release, and that is that you want, you want it to assist the transition to responsible citizenship. And I'm not sure how you do that if you just have a blanket restriction willy-nilly on, um, on any, on any kind of employment, or at least subject to the probation officer's permission. So there ought to be something, shouldn't there, to sort of guide the exercise of discretion? Shouldn't, uh, as I say, I thought Judge Richardson made a very constructive comment at the beginning of this discussion, and I wonder why you, would you resist that kind of, that kind of formulation? I will admit, Your Honor, that I was not offended at all by Judge Richardson's suggestion. Um, I, I found it interesting to leave the provision in place with a caveat at the end, probation shall approve employment unless there is. Here's where my concern lies. Um, I know there was a great bit of discussion, um, with appellant about the concern for contact with children, and I don't know that given the facts of this case, our concern should be limited to just interaction with children. Looking at this appellant, or looking at the appellant's work history and his vocational skills, one of the things that was of note was that he has a history of inappropriate sexual behaviors, um, to include touching by sexual interaction with school peers and staff being via social. Excuse me, initiated interaction with his, with his, with adults and his peers. That's right, as well as, um, when the phone dumps were done as part of the forensics in this case, there was evidence found of communication he was having with a, with an adult who was of low found Judge Richardson's suggestion to be, um, instructive, but I think the concern for the government would be that the restriction would only be tailored towards minors when there's a concern about vulnerable members of society. Wasn't it a possession of child pornography? This was a possession of child pornography. Wasn't convicted, the offense of conviction didn't relate to adults or people in the peer group? It did not. That was just part of the vocational history that was included in the PSR and a note from his parents that suggested they had great concern. He would, he would have difficulty living successfully within the community. I agree with you, Judge Richardson. I think a very crucial part of supervised release is the bridge between incarceration and, uh, civic responsibility, being out in the community, being productive. And yeah, it's important that that is a very important role that probation plays in assisting them in that regard. Um, but I, even though we recognize that this provision, that this condition is a broad, broad condition, we don't think it's overly broad given the defendant. Um, so, so counsel here, here's the, just to help me understand that the concern I've got there is that might be a reasonable sort of conclusion. Um, and you give a pretty good explanation of some of those details, but when I read the judge's explanation, um, it, it comes up a bit short of the explanation that you've just given us, right? And it may well be that, that a judge could have articulated, you know, persuasive reasons for including non-children, um, maybe, maybe not, right? But the challenge I've got is I don't see that sort of specificity tied to this restriction in the explanation that the court gave. And so, you know, in giving such a broad condition, it strikes me that at a minimum, we didn't have enough explanation here. Maybe there wouldn't be, couldn't be enough explanation, but at least we would have to say there's not enough explanation for this kind of breadth on, on the record that we've got below. Help me understand why that is wrong or that, you know, maybe, maybe you don't fight that too much. Well, I, I don't disagree with the court. I, um, I do note that judge, um, the district court did discuss just very briefly, um, the appellant's work history when she noted his ability to maintain employment and, um, the fact that he's been able to live independently despite his lower functioning. But the court, obviously in, in making- But it doesn't tie that to anything negative, right? I mean, that's the problem, right? If she, if, if the court had said, you know, let's talk about his work history, right? And there are 17 incidents of sexual harassment, right? And so that's why I think he, okay, fine. But it seems like to me, the work history the court described is actually counter to the condition actually imposed. You're right, your honor. She doesn't put a negative spin on that at all. She, when you look at the work history, obviously she's, she's noted his work history when she made that finding. She would have seen that he's an unskilled laborer who's only had employment in the food industry, Applebee's, McDonald's, Burger King, CC's. And looking at that work history, particularly as it relates to, to children, he's likely, um, to continue to victim that we had in this specific case, just based on that work history. So his work history is so limited in industry that the court, in finding that he's held employment, obviously reviewed this work history and these vocational skills that discuss inappropriate sexual behaviors. I'd also note this Judge Richardson, unfortunately- Just so I'm clear, just so I'm right. You're saying I should imply that that was what the district court's reasoning was, but the district court didn't tell us that, right? The district court did not lay out the argument as I think as succinctly as I'm making for the court right now. The court had available to it this record though, as your honors also do. It was part of the PSR that the court reviewed. And district courts do have broad discretion. And in making reference to the work history, the court clearly reviewed this record. But if we, um, if we severed the employment restriction or broaden the employment restriction, if you broaden it from um, contact with children, uh, I guess the only thing that's left to you is really contact with adults. And, um, if you have the employment restriction, um, that broad, seems like there's, um, almost no job he could get. Um, because you would, you would, um, say, well, you know, he's, he, he has this particular weakness and, and proclivity. And, you know, there's no job or very few jobs that don't involve contact with, um, other people of your relative age group. And, um, so, you know, what, what I'm worried about is, is, is a, is a restriction could be so, so broad once we leave the focus on children, that it could prevent this man from getting any, uh, any kind of work. And, um, you know, maybe there's an evidentiary basis for something that's much broader, but I don't see it. And I, I, uh, it seems that what he was convicted of and the behavior that is, is so, um, horrific, um, all involved a child. And the nude photographs, there were 53 of them, and there were 26 sexually explicit photographs, but they were all of AC, who was the, um, um, and, you know, that unfortunately, in these sex offended, in the sex offender cases, the, the sickness, um, tends to relate to child pornography. And, um, that is the kind of thing that Congress has expressed special concern with. And so I have some nervousness about broadening it because it would keep him out of work altogether. And it, it, it wanders a bit far from the, uh, offensive conviction. Although I, I, I do think that, that, uh, district courts can consult the PSR, um, in formulating restrictions because, um, it's better that they have more information rather than less. So I don't object to the use of the PSR in formulating conditions of supervised release. But, um, you, I'm not, I'm just not sure that I want to, based on the record that I have, I'm not sure that the blanket, um, restriction or, or something that is subject has no guidance on the probation officer's, um, discretion. That seems to me to go pretty far. Your Honor, one, one thing I noted in my comments was that I, I, I was intrigued by probation shall approve employment unless there is. And I think perhaps one of the ways to, um, keep it restrictive and continue to allow the appellant to have some interaction with probation and making that determination is that any employment for him that involves interaction with minors, vulnerable members of society. And I would, I would say that that would include lower intellectual functioning, elderly individuals who are vulnerable and not capable necessarily of, of, um, protecting themselves or employment with access to computers or internet or information relative to children is a way to achieve the goal. Obviously we want the appellant to be able to work. Um, but we also want to reduce risk of recidivism and we want to protect the public. Those are equally important, um, goals of supervisor lease, not just, you know, the bridge to his success, but keeping the public safe while we bridge that success. All right. I think your time has expired. I'll ask, my colleagues have any further questions from you for you. I note that there are no further questions. All right. Then, um, Miss lady has some rebuttal time. So we'd be pleased to hear from her. Thank you, your honors. Um, with regard to the employment restriction, um, there are, are two examples I think, um, that are illustrative of, um, Mr. Hamilton's point here. Um, first Mr. Hamilton, um, did briefly work for his father in a metal shop. Um, and under the current terms of his supervisor, at least he would have to receive permission from his probation officer in order to work for his father. Um, he, he wouldn't come into contact with any other, um, members of the community. Um, and he'd also be under the auspices of his foster father. So it seems overly broad for him to have to receive the probation officer's permission to, to work for his father's metal shop. That's my question. Don't we have to get, don't we have to, at some level, like presume like the good faith of the probation officer? I mean, that, that example seems to suggest that, that you believe the probation officer is going to act wholly unreasonably. Well, we can always dream up an example where, Oh, this like extreme example, but generally we sort of rely on sort of plausible arguments. Right. And I worry a little bit that, you know, the mere, mere idea that you can come up with some, um, thing that a probation officer who was malicious, uh, and arbitrary could do is sufficient to invalidate a condition. Your honor, I don't believe that, that under the current, I mean, there will be nothing malicious on the part of the, the probation officer, but under the current terms of the supervisor lease, it's an employment that he'd have to get permission for. I don't, I, I mean, regardless of, um, Mr. Hamilton's relationship with the probation officer or the probation officer's position towards Mr. Hamilton, it's employment and he must ask for it's overly restrictive in that sense. So not, not that, so you're saying merely having to ask is the problem, even though we all recognize that the example you give every probation officer known would grant that permission. It's the mere fact of having to ask that is the problem for you. I, I, I can't think of a reason why the probation officer wouldn't approve that, that, that job based on the fact that it would, he would be, he would be being monitored by his foster father and, you know, away from every, every other person in the community. But as it is an employment, he would have to get permission. So, uh, uh, I can, I can move on to a different term if, if, if you'd like to, other than my other, um, employment example. Um, but if you have any other, if you don't have any further questions, um, I can finish there. All right. Well, Letty, thank you very much for your argument. And, um, Ms. Crockett, thank you very much for your, for your argument. We, um, we appreciate them both and the court will now, um, I'll ask the courtroom deputy if she will please adjourn court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Julius N. Richardson